**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID B. MALKIN, | Civil Action No.: 06-1103 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| CONTINENTAL CASUALTY COMPANY et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matters comes before the Court on a motion for partial summary judgment filed by Defendants Blackwell Sanders Peper Martin, LLP and Jeffrey J. Kalinowski, Esq., (the "Blackwell Defendants") and a motion for partial summary judgment filed by Defendant Continental Casualty Company ("Continental"). The Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a). The motions are unopposed.[1] The Court has considered Defendants' submissions and Plaintiff's Complaint and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motions are granted in part and denied in part.

---

[1]The Blackwell Defendants motion was filed October 16, 2009. Continental's motion was filed November 18, 2009. Plaintiff has previously made four requests for an extension of the due date for the opposition brief. These requests were consented to by Defendants and were granted by this Court. The last request was made on January 15, 2010, and requested an extension of the opposition due date until January 18, 2010, with a new return date for the motions of February 16, 2010. Plaintiff did not file an opposition by January 18, 2010, or even by February 1, 2010, the standard opposition due date for motions returnable on February 16. Plaintiff has filed no additional request for an extension of time.

I.    **BACKGROUND**[2]

Mr. Malkin, a New Jersey resident, "was an independent branch manager of a brokerage [firm] known as Walnut Street Securities, Inc. ("Walnut"), a Missouri based company with locations nationwide." (Blackwell Defs.' Stmt. of Undisputed Mat'l Facts [hereinafter Blackwell Defs.' Fact Stmt."] ¶¶ 1-2.) He also "was the president and shareholder of a business known as New Jersey Life & Casualty Associates, Inc. ("NJL&C")." (Id., at ¶ 3.) Mr. Malkin was licensed in New York "to sell securities, variable annuities and life insurance," and NJL&C "was licensed to sell insurance products in New York." (Id., at ¶¶ 9-10.) Mr. Malkin supervised Malcolm Chu, "a registered representative of Walnut Street" and NJL&C. (Compl. ¶¶ 10-11; see also Blackwell Defs.' Fact Stmt. ¶ 7.) Mr. Chu was licensed in New York "to sell securities, variable annuities and life insurance." (Blackwell Defs' Fact Stmt. ¶ 8.)

Mr. Chu sold an annuity to Patricia Walsh at her home in New York. (Id., at ¶ 11.) As a result of losses she sustained on the investment, Ms. Walsh filed an arbitration claim ("Walsh Arbitration") against Walnut, Mr. Malkin, and Mr. Chu with the National Association of Security Dealers, Inc. ("NASD") in New York. (Id., at ¶ 12.) Continental "was an insurer that provided error and omissions coverage to Walnut and Malkin." (Id., at ¶ 5.) As such, "Continental . . . retained the law firm of Blackwell Sanders Peper Martin, LLP ("Blackwell Sanders") to defend Malkin, Chu and Walnut Street" in the Walsh Arbitration. (Compl. ¶ 17; see also Blackwell Defs' Fact Stmt. ¶ 6.) The Blackwell firm is located in Missouri and Defendant Kalinowski is a partner in the firm and a Missouri resident. (Blackwell Defs' Fact Stmt. ¶ 4.)

---

[2] Because the present motions are unopposed and no responsive statement of facts has been filed by Mr. Malkin, the facts addressed by Defendants in their statements of facts are deemed admitted.

Prior to the arbitration hearing, a mediation was conducted in New York to try to resolve the matter. (Id., at ¶ 17.) The mediation was unsuccessful, and an arbitration hearing was conducted in New York in March 2003. (Id., at ¶ 21.) Ms. Walsh prevailed; and on April 4, 2003 an arbitration award in her favor was entered against Walnut Street, Mr. Malkin, and Mr. Chu. (Id., at ¶ 24.) Ms. Walsh was awarded compensatory and punitive damages. (Compl. ¶ 27.) "The Award cites New York law as the legal basis for the liability determinations and the amounts awarded." (Blackwell Defs' Fact Stmt. ¶ 24.) Pursuant to New York law, the punitive damages were imposed in order "to deter morally culpable conduct." (Id.)

In May 2003, the Blackwell Defendants filed a motion to vacate the arbitration award in the United States District Court for the Southern District of New York. (Id., at ¶ 25.) Ms. Walsh opposed the motion and cross-moved to have the award confirmed. (Id.) The Southern District of New York denied the motion to vacate and granted Ms. Walsh's motion to confirm the award. (Id.) During the course of the litigation, "[n]either Kalinowski nor anyone from the Blackwell firm ever came to New Jersey with respect to their representation of Malkin, Walnut and Chu in the Walsh Arbitration." (Id., at ¶18.)

"Continental . . . indemnified Malkin for the compensatory damage award against him and for the award of fees and costs for the arbitration proceedings, but did not indemnify [him] for the punitive damage award against him." (Compl. ¶ 28.) Thus, Mr. Malkin personally paid the punitive damage award. (Blackwell Defs.' Fact Stmt. ¶ 26.)

Mr. Malkin brought suit against Defendants claiming that the Blackwell Defendants "undertook the joint representation of [Walnut, Mr. Chu, and him] . . . without disclosing to [him] the potential conflicts of interest arising from the joint representation" and without

disclosing that "Walnut Street was a major client of . . . Blackwell Sanders." (Compl. ¶¶ 19, 20.)
He claims that Continental, who hired the Blackwell Defendants to represent him, "knew or
should have know" of such conflicts and that "Blackwell Sanders could not properly represent
the interests of Malkin while also representing Chu and Walnut Street." (Id., at 39(G)&(H).)
Mr. Malkin further claims that "[d]uring their representation of [him], neither Continental,
Kalinowski, nor any of the attorneys at Blackwell Sanders . . . ever provided [him] with
individualized advice concerning [his] separate risks of liability or [his] exposure to damages for
the Walsh claim, nor discussed or advised [him] as to any strategies to avoid or minimize the
risks of liability and exposure to damages." (Id., at ¶ 21.) He also claims that "in preparation of
the defense to the Claim, Kalinowski received an opinion from a trusted potential defense expert
that the respondents' liability for Walsh's claim could not reasonably be defended," and that
"Kalinowski never disclosed this material information . . . to [him]." (Id., at ¶ 24.)

In his Complaint, Mr. Malkin seeks to be compensated for: the attorney's fees and other
costs associated with this action, the punitive damage award he paid, the lost profits and
investment income he claims resulted from the award and damages payment, and the
reimbursement of various fees he incurred related to the adverse award entered against him.
Defendants presently move for partial summary judgment as to his various damages claim. They
do not presently move for summary judgment as to liability.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil
Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show that no

genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The

burden then shifts to the non-moving party to present evidence that a genuine issue of material

fact compels a trial. Id. at 324. The Court must consider all facts presented and the reasonable

inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal

Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**B.     Choice of Law**

All defendants argue that New York law applies to Mr. Malkin's claims. Generally, in a

diversity action, this Court must apply New Jersey's choice of law rules to determine what law

should apply to state law claims. See Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).

Once it has been determined that an actual conflict in law exists, Lebegern v. Forman, 471 F.3d

424, 430 (3d Cir. 2006), for the types of claims asserted in this case, New Jersey uses the "most

significant relationship" test to determine which law applies, P.V. ex rel. T.V. v. Camp Jaycee,

962 A.2d 453, 455, 460 (N.J. 2008). This test is applied "on an issue-by-issue basis" and "is

qualitative, not quantitative." Id., at 460. The analysis begins by examining four state contacts:

(1) "the place where the injury occurred," (2) "the place where the conduct causing the injury

occurred," (3) "the domicil[e], residence, nationality, place of incorporation and place of business

of the parties," and (4) "the place where the relationship between the parties is centered." Id., at

461-62. Of these contacts, "the state in which the injury occurs is likely to have the predominant,

if not exclusive, relationship to the parties and issues in the litigation." Id., at 461. And, "[w]hen

both conduct and injury occur in a single jurisdiction, with only rare exceptions, the local law of

the state where conduct and injury occurred will be applied to determine an actor's liability." Id.,

at 462 (internal quotations omitted) (alteration in original).  Courts are to evaluate these four

contacts in light of the following principles: "(1) the interests of interstate comity; (2) the

interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of

judicial administration; and (5) the competing interests of the states." Id., at 463.

## III.   DISCUSSION

### A.   Attorney's Fees

"[Mr.] Malkin seeks the recovery of attorneys' fees, expert fees and litigation expenses in

connection with the prosecution of this legal malpractice case." (Blackwell Defs.' Fact Stmt. ¶

39.)  In New York, attorney's fees which are "merely an incident of the litigation" are not

recoverable in a legal malpractice cause of action.  Baker v. Dorfman, 239 F.3d 415, 426 (2d Cir.

2000).  In contrast, under New Jersey law, such fees are recoverable.  In re Estate of Vayda, 875

A.2d 925, 928 (N.J. 2005) ( "In the context of an attorney malpractice action, we allow[] the

malpractice plaintiff to recover, as consequential damages, the attorneys' fees incurred in

prosecuting the malpractice action.").  Thus, a conflict exists between New York and New Jersey

law with respect to the recovery of attorney's fees.

Applying the most significant relationship test, this Court finds that New York law

applies to this issue.  The sale of the investment at issue occurred in New York, the arbitration

claim was filed and awarded in New York, the arbitrator applied New York law, and the

subsequent litigation involving the arbitration took place in New York.  The injury for which Mr.

Malkin is seeking redress is related to the damages arising from the New York arbitration award

and the Blackwell Defendants' representation of him in that action.  Thus both the injury and the

conduct causing the injury occurred in New York. Additionally, on the facts before the Court, the relationship between the Missouri attorneys and Mr. Malkin, a New Jersey resident, was centered around the litigation occurring in New York. Mr. Malkin met with the Blackwell Defendants in New York and the arbitration and subsequent litigation occurred in New York. Thus, the only factor weighing in favor of New Jersey is the mere fact of Mr. Malkin's New Jersey residence and the fact that he has an office in New Jersey. This is insufficient to outweigh the fact that the place of injury and conduct occurred in New York.

Additionally, applying New York law best supports New Jersey's choice of law principles. Where, as here, Mr. Malkin reached into New York to solicit and conduct business and where the center of the present dispute is an arbitration award that was entered in New York and determined in accordance with New York law, the interests of interstate comity and the competing interests of the states weighs heavily in favor of the application of New York law. Therefore, summary judgment is granted in favor of Defendants with respect to Mr. Malkin's claim for attorney's fees; they are not recoverable.[3]

### B.   Punitive Damages

Mr. Malkin's Complaint seeks reimbursement for the punitive damage award he paid to Ms. Walsh. Although Defendants state that New York law applies and that punitive damages may not be awarded as compensatory damages in a legal malpractice action where they were

---

[3] Defendants argue that any expert fees and other costs incurred also should be barred under New York law. However, the primary cases cited by Defendants discuss recovery of attorney not expert fees. The Blackwell Defendants do cite a New York case and a Third Circuit case regarding the recovery of expert fees in general, as being limited to statutory amounts. It is unclear what, if any, expert fees Mr. Malkin is actually seeking. The Court finds that this issue is best resolved after a finding on liability and a specific claim for fees.

awarded "for the purpose of deterrence or punishment," choice of law questions must be resolved on an issue by issue basis, and Defendants do not appear to argue that an actual conflict of law exists with regard to such damages. In fact, no conflict appears to exists with respect to the areas discussed by Defendants. Defendants note that the general public policy is that liability for punitive damages, which are awarded to punish a specific wrongdoer, should not be shifted to another party, especially an insurer. See Soto v. State Farm Ins. Co., 635 N.E.2d 1222, 1224 (N.Y. 1994); Johnson & Johnson v. Aetna Cas. and Sur. Co., 667 A.2d 1087, 1091 (N.J. Super. Ct. App. Div. 1995). They also argue that claims for "lost punitive damages" are generally not appropriate." See, e.g., Braun v. Rosenblum, 25 A.D.3d 639, 640 (N.Y. App. Div. 2006). However, for the reasons discussed below, this Court is not convinced that, at the current stage of litigation, these issues are not dispositive of the claims as brought by Mr. Malkin.

First, Mr. Malkin clearly is not making a claim for lost punitive damages. Lost punitives are where a plaintiff who alleges that his claim was wrongfully dismissed due to an attorney's malpractice seeks to be compensated for punitive damages that he may have received had the claim not been dismissed. Here, Mr. Malkin is seeking to be compensated for punitive damages that were actually awarded against him. Second, although Mr. Malkin's claim against Continental, at least in part, could be viewed as seeking indemnification for the punitive damage award, the essence of his claim against all Defendants is that the Blackwell Defendants, hired by Continental to represent him, had various conflicts of interest which were not disclosed to him and which adversely affected their representation of him. He also asserts that a potential defense expert hired informed Defendants that the case was not defensible, but that such information was not given to him. Thus, the heart of his claims against Defendants appears to be that had he been

properly represented and advised the arbitration proceeding and resulting award may have been avoided altogether.

Despite the general policy that punitive damages not be shifted to another party, this Court is not convinced that such shifting may *never* be appropriate. Under both New York and New Jersey law, a plaintiff in a legal malpractice action may recover consequential damages caused by an attorney's malpractice so long as the damages are actual and ascertainable. See Baker, 239 F.3d at 426-27; Saffer v. Willoughby, 670 A.2d 527, 533 (N.J. 1996).[4] Defendants have not moved for summary judgment as to liability, and it is unclear how any liability, if found, will be framed, i.e. as caused by attorney negligence at the arbitration hearing or as caused by attorney conflicts and negligence in the representation in general. Therefore, the Court finds that the determination of whether Mr. Malkin may properly seek compensation for the punitive damage award paid is premature. Summary judgment on this claim for damages is denied without prejudice to be re-asserted after or in conjunction with a determination as to liability.

**C.      Other damages**

The Defendants do not argue that a conflict of law exists with regard to Mr. Malkin's claim for lost profits and investment income or his claims for fees paid in relation to regulatory actions against him. Therefore, the Court applies New Jersey law.

1.      Lost Investment Income and Profits

Mr. Malkin seeks compensation for alleged lost investment income due to the "redirection of funds" to pay for the punitive damage award. (See, e.g. Compl. ¶ 32.) He also

---

[4] The Court notes that under New York law, "punitive damages awarded against an insured in a civil suit are not a proper element of the compensatory damages recoverable in a suit against an insurer for a bad-faith refusal to settle." Soto, 635 N.E.2d at 1225.

seeks compensation for alleged lost profits resulting from the adverse reporting requirements of the award against him. (Id., at ¶¶ 33-34.) With respect to his allegation of losses due to the redirection of funds, he "testified that . . . he had other financial sources from which he [could] have paid the verdict." (Blackwell Defs.' Fact Stmt. ¶ 33.) He did not have to use the funds he chose to use. He also testified that the amount of any potential investment gain losses was "pure speculation." (Id., at ¶ 38.) With respect to lost profits, he stated that he "cannot quantify how much income was allegedly lost due to the termination of renewal commissions and service fees . . . and has no record nor any independent knowledge to verify such alleged losses." (Continental's Stmt. of Undisputed Mat'l Facts ¶ 5.) As noted above, new Jersey law requires that damages be actual and ascertainable, not speculative. By his own admission, Mr. Malkin's claims for lost investment income and profits are based on speculation. Therefore, summary judgment in favor of Defendants for these damage claims is also granted.

### 2. Fines and Fees Related to State Regulatory Action

Mr. Malkin paid $750 to the Massachusetts Division of Insurance. (Blackwell Defs.' Fact Stmt. ¶ 30.) He also paid $1,500 in attorney's fees to defend against an investigation by the New York Insurance Department. (Id., at ¶ 32.) Mr. Malkin argues that "the settlement of [the arbitration] claims would not have required the reporting of an adverse result" to various state regulatory bodies. (Compl. ¶ 33.) Even accepting this as true, Defendants argue that, the fine and fees were generated not merely because of the adverse award, but as a result of Mr. Malkin's failure to timely report the award against him. (See Blackwell Defs.' Fact Stmt. ¶¶ 31-32.) Thus, they argue, there is no genuine issue of fact that causation as to these damages exists. This Court agrees. Based on the undisputed facts presently before the Court, Mr. Malkin's actions in

failing to timely report the award, not the award itself, were the cause of these damages.

Therefore, summary judgment in Defendants favor is also granted as to these damages.

## IV.   CONCLUSION

       For the foregoing reasons, the Blackwell Defendants' motion for partial summary judgment is granted in part and denied in part, and Continental's motion for partial summary judgment is also granted in part and denied in part.  An appropriate Order accompanies this Opinion.

DATED: February 16, 2010         /s/ Jose L. Linares
                                 JOSE L. LINARES
                                 UNITED STATES DISTRICT JUDGE